## COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| WORCESTER, ss. | WORCESTER SUPERIOR COURT<br>CIVIL ACTION NO: 2385CV563-B |

JAMILAH WRIGHT,

    Plaintiff

v.

LIFE CARE CENTERS OF AMERICA, INC.,

    Defendant

### COMPLAINT AND DEMAND FOR JURY TRIAL

#### Parties, Jurisdiction and Venue

1.  Plaintiff Jamilah Wright ("Ms. Wright") is an individual with a primary address located at 59 Pine Street, Fitchburg, MA 01420.

2.  Defendant Life Care Centers of America, Inc. ("LCCA" or "the Company") is a Tennessee company registered in Massachusetts and doing business in Massachusetts that provides skilled nursing and rehabilitation services at locations throughout the United States, including multiple locations in Massachusetts.

3.  This Court has jurisdiction over this matter pursuant to M.G.L. c. 223A § 3 and this Court has jurisdiction over this matter pursuant to M.G.L. c. 212 § 3A and 4, and M.G.L. c. 151B § 9.

4.  Venue is appropriate in Worcester County because the Plaintiff resides in Fitchburg, Worcester County, Massachusetts.

## Facts

5. LCCA is a company that provides skilled nursing and rehabilitation services at locations throughout the United States, including multiple locations in Massachusetts.

6. One of LCCA's locations in Massachusetts is Life Care Center of Nashoba Valley located in Littleton, Massachusetts.

7. Nashoba Valley is a skilled nursing and rehabilitation facility in Littleton, Massachusetts.

8. Ms. Wright has been a licensed Certified Nurse Aide (CNA) since March 7, 1995.

9. In or about September 2016, Ms. Wright was hired by LCCA to work as a Certified Nursing Assistant (CNA) at Nashoba Valley.

10. On or about October 27, 2018, following a shooting incident that occurred in the neighborhood where Ms. Wright lived, Ms. Wright was arrested and charged with serving as an accessory after a crime.

11. The allegations against Ms. Wright were false, and Ms. Wright disputed the charges.

12. On or about October 31, 2018, notwithstanding Ms. Wright's dispute of the charges and her availability to work, LCCA terminated Ms. Wright's employment on the basis of her arrest.

13. The charges against Ms. Wright were ultimately dismissed.

14. On or about June 4, 2019, Ms. Wright applied to work again for LCCA at Nashoba Valley.

15. LCCA rehired Ms. Wright, but LCCA informed Ms. Wright that she would lose the seniority she had earned in her first two years working for LCCA and would have to start over for purposes of pay rates and benefits.

16. Throughout Ms. Wright's employment with LCCA, and especially following Ms. Wright's return in 2019, Ms. Wright experienced a work environment in which she was made to feel uncomfortable due to her race and associated stereotyping.

17. During Ms. Wright's employment at Nashoba Valley, she was one of few African-American employees, and all of the individuals employed in management roles were white.

18. Ms. Wright's supervisors were consistently unable to pronounce her first name, and treated her as an outsider even after she had worked there for a significant period of time.

19. When Ms. Wright returned to LCCA in 2019, co-workers and supervisors frequently made jokes and inappropriate comments about the incident related to her arrest, even though Ms. Wright had been cleared of the charges.

20. The comments about Ms. Wright's arrest were characterized by racist stereotyping, and some of Ms. Wright's co-workers implied that she was somehow a threat to their personal safety.

21. Some of Ms. Wright's co-workers made comments such as "don't get Jamilah mad" and others falsely suggested that Ms. Wright had been armed and had "waved a gun around."

22. None of the charges against Ms. Wright involved possession of a firearm, and Ms. Wright has never owned or possessed a firearm.

23. Ms. Wright's co-workers' perceptions about her were influenced by negative racial stereotypes and assumptions.

24. Partly because of this work environment, Ms. Wright requested a transfer to another LCCA location.

25. On or about February 21, 2020, Ms. Wright was approved to transfer to the LCCA location in Fitchburg, Massachusetts.

26. On or about March 6, 2020, Ms. Wright was in a car accident and suffered injuries that required her to be out of work for three days.

27. Ms. Wright did not transfer to the Fitchburg location, but instead returned to work on or about March 9, 2020 at the LCCA Nashoba Valley location.

28. Upon Ms. Wright's return to LCCA Nashoba Valley, she was assigned to new patients who were in isolation.

29. Ms. Wright was told by LCCA that these new patients were "just having flu-like symptoms."

30. In fact, the patients Ms. Wright was assigned to were infected with COVID-19, the novel coronavirus that has caused a global pandemic.

31. Not only did LCCA fail to inform Ms. Wright that the patients had been suffering from COVID-19, but LCCA also denied Ms. Wright the necessary Personal Protective Equipment (PPE) to care for those patients.

32. On or about March 24, 2020, two days after Ms. Wright began caring for these patients, she developed a fever.

33. Ms. Wright contacted her primary care physician and then tested positive for COVID-19.

34. As a result of being infected with COVID-19, Ms. Wright was required to isolate herself.

35. As soon as Ms. Wright finished the required isolation period, her mother tested positive for COVID-19 and Ms. Wright was required to isolate again.

36. When Ms. Wright was finally ready to return to work, LCCA informed her that she had "been out too long" and would have to start all over again for purposes of seniority, pay and benefits.

37. On or about June 1, 2020, LCCA terminated Ms. Wright's employment.

38. It was made clear to Ms. Wright that her employment had been terminated due to her necessary quarantine and related leave in addition to the preexisting race-based bias to which she had been subjected.

39. White employees of LCCA at Nashoba Valley were treated differently from black employees with respect to time off and employment status.

40. White employees at LCCA at Nashoba Valley were less likely to face negative employment consequences for being late or taking time off than non-white employees.

41. There is at least one white employee of LCCA at Nashoba Valley who was charged with domestic assault, but whose employment was not terminated.

42. There is at least one white employee of LCCA at Nashoba Valley who was rehired several months after leaving employment with LCCA without suffering any loss of seniority.

43. LCCA's decision to terminate Ms. Wright's employment following her infection with COVID-19, and its position that Ms. Wright would lose all seniority for purposes of pay and benefits if she returned to work there, were motivated in part by negative racial stereotyping.

44. By terminating Ms. Wright's employment following her infection with COVID-19, and taking the position that Ms. Wright would lose all seniority for purposes of pay and benefits if she returned to work there, LCCA treated Ms. Wright differently from other similarly situated white employees.

45. Ms. Wright has complied with all applicable prerequisites to filing this action, including but not limited to the filing of a complaint with the Massachusetts Commission Against Discrimination (MCAD).

## COUNT I
**Violations of M.G.L. c. 151B § 4, Race Discrimination**

46. Ms. Wright restates and incorporates all of the foregoing paragraphs herein.

47. As set forth herein, the Defendant's decision to deny Ms. Wright the seniority, pay, and benefits she earned was motivated by negative racial stereotyping and thus violated M.G.L. c. 151B § 4.

48. As set forth herein, the Defendant subjected Ms. Wright to a hostile work environment based on negative racial stereotyping in violation of M.G.L. c. 151B § 4.

49. As set forth herein, the Defendant's termination of Ms. Wright was motivated by negative racial stereotyping and thus violated M.G.L. c. 151B § 4.

50. Pursuant to M.G.L. c. 151B §9, Ms. Wright is entitled to recover from the Defendants her damages and reasonable attorneys' fees and costs.

## COUNT II
### Violations of M.G.L. c. 149 § 148C, Earned Sick Time

51. Ms. Wright restates and incorporates all of the foregoing paragraphs herein.

52. As set forth herein, the Defendant's decision to deny Ms. Wright the seniority, pay, and benefits she earned was motivated by her use of earned sick time, necessary quarantine, and related leave and thus violated M.G.L. c. 149 § 148C.

53. As set forth herein, the Defendant subjected Ms. Wright to a hostile work environment based on her use of earned sick time, necessary quarantine, and related leave in violation of M.G.L. c. 149 § 148C.

54. As set forth herein, the Defendant's termination of Ms. Wright was motivated by her use of earned sick time, necessary quarantine, and related leave and thus violated M.G.L. c. 149 § 148C.

55. Pursuant to M.G.L. c. 149 §150 Ms. Wright is entitled to recover from the Defendant treble her damages and reasonable attorneys' fees and costs.

## COUNT III
## Breach of Contract

56. Ms. Wright restates and incorporates all of the foregoing paragraphs herein.

57. By its conduct described herein, the Defendant breached its contract with Ms. Wright, and Ms. Wright is entitled to be compensated for her resulting damages.

58. Alternatively, the Defendant should be held liable to Ms. Wright under the principles of promissory estoppel because Ms. Wright reasonably relied on the Defendant's representation that she would be able to return to work after Ms. Wright's necessary quarantine and related leave without losing seniority, wages, or benefits.

59. Ms. Wright could have pursued other employment opportunities if she had known she would have lost the seniority, wages, and benefits she had earned prior to her necessary quarantine and related leave.

60. Ms. Wright is entitled to her damages and reasonable attorney's fees and costs.

## COUNT IV
## Breach of the Implied Covenant of Good Faith and Fair Dealing

61. Ms. Wright restates and incorporates all of the foregoing paragraphs herein.

62. By the conduct described herein, the Defendant breached the covenant of good faith and fair dealing implied in their contract with Ms. Wright, and Ms. Wright is entitled to her damages and reasonable attorney's fees and costs.

WHEREFORE, Plaintiff Jamilah Wright prays that this Honorable Court enter the following relief:

    A.    Enter judgment in her favor on all counts of her Complaint according to her proof at trial;

    B.    Award her all her costs of suit, interest and attorneys' fees;

 C. Award her treble damages with respect to her unpaid wages;

 D. Award her compensatory damages; and

 E. Award her such other relief as this Court deems just and appropriate.

PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.

Respectfully submitted,

Plaintiff Jamilah Wright
By her attorneys,

*/s/Benjamin C. Rudolf*
Benjamin C. Rudolf, BBO# 667695
Fernando M. Figueroa, BBO# 698934
Murphy & Rudolf, LLP
446 Main Street,
Suite 1530
Worcester, MA 01608
(508) 425-6330
brudolf@murphyrudolf.com
figueroa@murphyrudolf.com

Dated: May 22, 2023